UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRI-PAC, INC.,

        Plaintiff,

v.                                       CAUSE NO. 3:24cv902 DRL-JEM

FALLIEN COSMECEUTICALS LTD.,

        Defendant.

## OPINION AND ORDER

Tri-Pac, Inc. initiated this contract suit against Fallien Cosmeceuticals Ltd. (doing business as Fallene Ltd.) for nonpayment of orders to purchase specialty chemicals used to make sunscreen products. Fallene asserted amended counterclaims for breach of contract, implied warranties, unjust enrichment, and conversion because it received short shipments or defective product. Tri-Pac moves to dismiss the counterclaims under Rule 12(b)(6) today. The court grants the motion in part.

## BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the amended counterclaim as true in deciding this motion. Fallene is a Delaware corporation principally based in Pennsylvania that sells sunscreen, among other consumer health and skincare products [14 ¶ 1, 5]. On October 25, 2021, Fallene submitted purchase order (No. 2086) to Tri-Pac, a contract manufacturer incorporated and principally based in Indiana, for the manufacture of 33,000 aerosol bottles of sunscreen for $123,589.00 [*id.* ¶ 2, 6-7]. On February 15, 2022, Fallene submitted another purchase order (No. 2153) to Tri-Pac for manufacture of another 10,000

aerosol bottles of sunscreen for $42,550.00 [*id.* ¶ 8].[1] As alleged, Tri-Pac accepted the purchase orders and agreed to perform the work as specified [*id.* ¶ 10]. On April 8, 2022, Fallene paid Tri-Pac a $70,135.50 deposit [*id.* ¶ 11].

In January 2023, Fallene received a shipment of goods from Tri-Pac and found after testing that the goods weren't up to standard [*id.* ¶ 12]. Fallene rejected the goods and contacted Tri-Pac to resolve the issue [*id.*]. That February, Tri-Pac agreed to fix the problems, and Fallene returned the delivery that March [*id.* ¶ 13-14].

In October 2023, Tri-Pac delivered what appeared to be acceptable products, albeit not all Fallene ordered [*id.* ¶ 15-16]. For purchase order 2086, Fallene received 10,073 of 33,000 units, valued at $37,776.99 of its $123,589.00 order [*id.* ¶ 17]. This left $32,358.51 on its deposit [*id.*]. For purchase order 2153, Fallene received 4,296 of 10,000 units, or $18,279.49 of its $42,550.00 order [*id.* ¶ 18]. Fallene says applying this to the remaining deposit results in a $14,079.03 outstanding balance [*id.* ¶ 19].

Fallene alleges that some of the units in Tri-Pac's delivery were defective—many bottles failed to dispense sunscreen properly or failed to comply with manufacturing specifications [*id.* ¶ 20]. The goods initially appeared acceptable but weren't the quality Fallene expected, and customer complaints in the ensuing months caused Fallene to realize it could no longer sell the product [*id.* ¶ 21]. Tri-Pac neither manufactured the remainder of Fallene's orders nor returned

---

[1] The amended counterclaim sometimes refers to purchase order 2153 and other times to purchase order 2152 [*see, e.g.*, 14 ¶ 8, 15, 18-19]. It seems clear from context that the reference is to the same purchase order, so the court calls the order 2153 for clarity.

the residual deposit [*id.* ¶ 23]. In November 2023, Tri-Pac sent invoices to Fallene for the cost of unused manufacturing chemicals [*id.*].

In October 2024, Tri-Pac sued Fallene in state court for breach of contract and attached to its complaint a document titled "Tri-Pac, Inc. Terms and Conditions of Sale" [4-1 (capitalization removed)]. That November, Fallene removed under diversity jurisdiction, *see* 28 U.S.C. § 1332, and filed its counterclaim. Fallene says this counterclaim was proper notice to Tri-Pac of the defective products [14 ¶ 22]. In December 2024, Tri-Pac moved to dismiss the counterclaim, and Fallene amended with the court's leave.

Fallene's amended counterclaim presents six counts—contract (count 1), implied warranty of merchantability (count 2), implied warranty of fitness for a particular purpose (count 3), unjust enrichment (count 4), conversion under the Indiana Crime Victims Relief Act (count 5), and conversion under Pennsylvania law (count 6). On January 24, 2025, Tri-Pac moved to dismiss the amended counterclaim under Rule 12(b)(6). Amid briefing, Tri-Pac attached to its reply a February 10, 2022 quotation [18-1], a February 24, 2022 sales order for purchase order 2086 totaling $123,589.00 [18-2], and an April 1, 2022 down payment invoice with reference number 2086 for $70,135.50 [18-3]. Fallene filed a surreply in June 2025 with the magistrate judge's leave [20, 21]. The motion is thus ripe for ruling.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations and citation omitted).

## DISCUSSION

A. *Treatment of Evidence Outside the Pleadings.*

Tri-Pac says Fallene's contract and warranty counterclaims are foreclosed by Tri-Pac's terms and conditions of sale, which it contends were incorporated into their agreement. Tri-Pac attaches to its reply brief the quotation to which it says Fallene's purchase orders respond, and the quotation says it incorporates terms and conditions from Tri-Pac's website [18-1]. Tri-Pac also attaches a sales order and down payment invoice that likewise claim to incorporate these terms and conditions [18-2; 18-3]. The court must determine whether the quotation, sales order, or invoice may be considered at this stage.

Generally, if a party attaches evidence outside the pleadings in a motion to dismiss, "the court must either convert [the motion] into a motion for summary judgment under Rule 56 . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). There is a narrow exception: a dismissal motion can rest on critical documents, central to the claim and referred to

4

in the pleading. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *188 LLC*, 300 F.3d at 735. Neither party discusses this exception.

The amended counterclaim says Fallene submitted two offers to Tri-Pac—purchase order 2086 for goods worth $123,589.00 and purchase order 2153 for goods worth $42,550.00 [14 ¶ 7-8]. The company then alleges that "Tri-Pac accepted the [purchase orders] and agreed to perform the work specified therein" and "Fallene paid Tri-Pac a deposit of $70,135.50 for [purchase order] 2086" [*id.* ¶ at 10-11]. This is the extent to which Fallene describes the negotiations and deposit. There is no reference to documents outside the purchase orders—not a quotation, sales order, or invoice. Nor, for that matter, does the amended counterclaim cite the terms and conditions, which Tri-Pac only attaches to its complaint and not to its motion to dismiss or briefing. Whether these documents might be within the four corners of Tri-Pac's opening pleading, the court cannot say they are a part of this amended counterclaim—either incorporated or even referenced. The amended counterclaim simply doesn't mention these materials.

Tri-Pac alternatively attempts to place its terms and conditions before the court by pointing to Fallene's answer to its complaint. Therein, Fallene admits that in late 2021, "Tri-Pac submitted a quote, later revised, to Fallene for the contract manufacture of certain sunscreen products" [6 ¶ 7] and that Fallene "issued various purchase orders against the quote for sunscreen products" [*id.* ¶ 9]. Though Tri-Pac doesn't name it, these "formal concessions in the pleadings" may be judicial admissions. *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 947 (7th Cir. 2024). But Tri-Pac didn't attach the quote to its complaint, so the document to which the admissions refer is far from obvious.

5

What's more, the admissions contain insufficient details (no purchase order numbers, purchase amounts, units ordered, etc.) to discern whether they contemplate the same transactions described in Fallene's counterclaim. Tri-Pac's complaint conveys their interactions in terms vague enough that they could recount separate dealings, or at least dealings that only partially overlap. And perhaps they do—for the amended counterclaim recounts purchase orders on October 25, 2021 and February 15, 2022 [14 ¶ 7, 8], but Tri-Pac's quotation is dated February 10, 2022 [18-1]. The court can't have confidence, as a matter of law, that Tri-Pac's quotation set agreed terms for these two purchase orders if one purchase order came over three months earlier.

Neither the quotation, the sales order, nor the invoice falls into the exception that would allow the court to consider them on the motion to dismiss. Tri-Pac says Fallene's alleged rejection of its goods wasn't according to the terms of their agreement and those same terms disclaim implied warranties. Maybe so, but without the contract or terms in the record for purposes of the motion, the court has no basis to evaluate them. Nor will the court convert this motion to summary judgment, for its experience is that these battles of the forms are often aided by a more developed record than this piecemealed one.

B. *Contract and Implied Warranties (Counts 1, 2, and 3).*

Tri-Pac argues that Fallene failed to properly reject its goods or give timely notice of a breach under the Uniform Commercial Code (UCC). Neither party disputes that they have a valid and applicable contract (though Fallene notes that there hasn't been a conclusive finding of a binding contract). The first issue is choice of law.

Sitting in diversity, the court applies Indiana's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d

6

1012, 1015 (7th Cir. 2002). When the parties agree that no conflict of laws exists or fail to identify one worthy of analysis, the court will apply the law of the forum state. *See Tricor Auto. Grp. v. Dealer VSC Ltd.*, 219 N.E.3d 206, 216 n.7 (Ind. Ct. App. 2023); *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002) ("If the difference between the state laws is illusory and no conflict exists, our inquiry ends and we apply the law of the forum state."). Though choice of law often occurs on a claim-by-claim basis, *see Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004), the UCC question today is the same whether it arises by way of contract or implied warranty.

Tri-Pac says Michigan law applies based on a provision in the terms and conditions. Fallene pushes for Pennsylvania law. An oft-great benefit of the UCC, the standard seems the same in both jurisdictions—that "[r]ejection of goods must be within a reasonable time after their delivery or tender" and that it will be "ineffective unless the buyer seasonably notifies the seller." Mich. Comp. Laws § 440.2602(1); 13 Pa. Cons. Stat. § 2602(a). There seems no conflict, and no party identifies one, so Indiana law applies, though the result is the same because the law is likewise identical (at least for today's purposes). *See* Ind. Code § 26-1-2-602(1); *Caudill Seed & Warehouse Co. v. Rose Seeding & Sodding, Inc.*, 764 F. Supp.2d 1022, 1029 (S.D. Ind. 2010).

Under Indiana law, if goods or tender of delivery fail to conform to the contract, the buyer can reject any portion of the goods or the entire delivery if rejection occurs within a reasonable time. Ind. Code §§ 26-1-2-601, 26-1-2-602(1); *see McClure Oil Corp v. Murray Equip., Inc.*, 515 N.E.2d 546, 551 (Ind. Ct. App. 1987). Valid rejection entitles the buyer to cancel the contract and recover the price paid, as well as certain other damages. Ind. Code § 26-1-2-711; *see Jones v. Abriani*, 350 N.E.2d 635, 646 (Ind. Ct. App. 1976). When goods subject to an implied warranty

7

are accepted but don't conform to the warranty, the buyer may recover damages according to the difference in value between the goods as warranted and the goods received, provided the buyer notifies the seller within a reasonable time. Ind. Code §§ 26-1-2-607(3)(a), 26-1-2-714; *see Jones*, 350 N.E.2d at 646; *Polycon Indus., Inc. v. R&B Plastics Mach., LLC*, 750 F. Supp.3d 926, 946 (N.D. Ind. 2024) ("failure to give notice waives any right to assert a breach"). In either scenario, notice (of rejection or nonconformity) is central to preserving a remedy.

Fallene's amended counterclaim says Tri-Pac delivered goods in October 2023 that appeared acceptable, but Fallene discovered they were defective "in the ensuing months" [14 ¶ 15, 20-21]. It also alleges that Fallene notified Tri-Pac of the defects in its November 2024 counterclaim [*id.* ¶ 22]. Tri-Pac doesn't contest whether a counterclaim constitutes proper notice, and, whether the court has thoughts, the court cannot make arguments for the parties. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule). Instead, Tri-Pac hints that Fallene learned of the defects soon after delivery such that notice more than a year later would be unreasonable under the law. This inference is a leap too far. The counterclaim is hazy about when exactly Fallene discovered the issues, and the "ensuing months" could plausibly refer to a period close to or including November 2024. On this record, the court cannot say as a matter of law when Fallene identified the defects.

"What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." Ind. Code § 26-1-1-204(2); *McClure Oil*, 515 N.E.2d at 551. Given the undeveloped facts about when exactly Fallene became aware of the defects, it is premature to decide that notice occurred too late, if that's even an appropriate question for the court at all once the record has been developed. *See, e.g.*, *Square D Co. v. Breakers Unlimited*, 2009 U.S. Dist.

LEXIS 42672, 7 (S.D. Ind. May 19, 2009) ("Whether rejection occurred within a reasonable time is a question of fact"). In short, the court can't say Fallene's contract and warranty claims (counts 1, 2, and 3) are barred. They survive the motion to dismiss.

    C.  *Unjust Enrichment (Count 4).*

Fallene brings an unjust enrichment claim in the alternative to its other claims. It alleges Tri-Pac inequitably retained part of Fallene's deposit when Tri-Pac failed to perform the work described in purchase order 2086 [14 ¶ 40]. Tri-Pac says this claim necessarily fails because the transaction is covered by their contract.

Albeit in otherwise good briefing of their positions, the parties seem to underexplain choice of law for this claim. Tri-Pac argues applicable law for contract and tort claims but lays no stake for unjust enrichment, which arises in equity. *See, e.g.*, *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991) (quantum meruit "is not a contract at all"); *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) ("Unjust enrichment is an equitable remedy"). Tri-Pac cites a federal case that appears to concern an Indiana unjust enrichment claim, though the relevant authorities therein interpret Illinois law. *See Reg'l Redevelopment LLC v. U.S. Steel Corp.*, 2024 U.S. Dist. LEXIS 134188, 10-11 (N.D. Ind. July 30, 2024) (citing *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024); *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016)). For its part, Fallene says Pennsylvania law applies, having conducted a contract claim choice of law analysis (it also cites Michigan precedents).

Under both Indiana and Pennsylvania law, a claim for unjust enrichment is permitted only when a transaction between the parties isn't otherwise governed by a contract. *See Coppolillo v. Cort*, 947 N.E.2d 994, 997-98 (Ind. Ct. App. 2011); *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa.

Super. Ct. 2004). Applying Indiana's choice of law rules, and with no conflict identified, Indiana law applies. *See Klaxon*, 313 U.S. at 496; *Nelson*, 288 F.3d at 963.

To prove an unjust enrichment claim—eventually, as this case is merely at the pleading stage—a plaintiff must "establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh*, 573 N.E.2d at 408. To avoid the conclusion that its contract claim forecloses its unjust enrichment claim, Fallene says there hasn't been a conclusive finding of a binding and applicable contract between the parties. But no one debates there was; they might debate the terms but not whether a contract existed. Fallene alleges a contract—that it placed orders and gave consideration, and Tri-Pac provided some of the requested product in return, even if not of the proper quantity or specifications [14 ¶ 39-40]. *Conwell v. Gray Loon Outdoor Mktg. Grp.*, 906 N.E.2d 805, 812-13 (Ind. 2009) ("The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties."). Though the terms are in question, neither party argues the contract is invalid or that Fallene complains of something outside its bounds.

A complainant naturally can plead in the alternative, but Fallene's unjust enrichment allegations overlap entirely with those that make up its contract claim [14 ¶ 7-8, 10-11, 15-21, 23-29]. Restated, Fallene states no facts for its unjust enrichment claim that aren't covered by the alleged contract or are outside its seeming scope, so the claim is accordingly precluded by law. *See Coppolillo*, 947 N.E.2d at 997-98. The court will dismiss count 4. Should the facts turn out differently, then Fallene may endeavor to reallege its independent unjust enrichment claim by way of amendment under Rule 15.

D. *Conversion (Counts 5 and 6).*

Finally, Tri-Pac argues that Fallene's counterclaims for conversion under Indiana and Pennsylvania law (two separate counts) must be dismissed because both states forbid such claims when the underlying duty emerges from a contract. Fallene says each conversion claim is properly pleaded as an alternative theory to all other claims.

Because Fallene alleges both Indiana and Pennsylvania tort claims, the court must determine which law applies. Under the law of both states, a party can't bring a conversion claim based on a dispute governed by a contract. *See French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008) (A party can't show the requisite *mens rea* when "the gravamen of the [] action is one of contract."); *Wen v. Willis*, 117 F. Supp.3d 673, 683 (E.D. Pa. 2015) ("Where a tortious claim for conversion is based solely on the failure to perform under a contract, it is barred[.]"); *see also Bruno v. Erie Ins.*, 106 A.3d 48, 68 (Pa. 2014) (if "the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract"). No conflict has been presented today, so the court applies Indiana law. *See Klaxon*, 313 U.S. at 496; *Nelson*, 288 F.3d at 963. Fallene offers no reason to retain an independent Pennsylvania tort claim.

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind. Code § 35-43-4-3. The Indiana Crime Victims Relief Act permits a civil claim by persons affected by such conduct. Ind Code § 34-24-3-1. Though the claim is proven by a preponderance of the evidence, a claimant must still demonstrate criminal intent. *See French-Tex*, 893 N.E.2d at 1166-67. This *mens rea* requirement "differentiates criminal conversion from a more innocent breach of contract," in which a party's

11

duty emerges from the agreement. *See id.* at 1167; *see also id.* at 1168 ("the Indiana legislature did not intend to criminalize bona fide contract disputes").

Here, Fallene alleges Tri-Pac exerted unauthorized control over its funds because it failed to perform the work it promised under their contract [14 ¶ 42-43, 45-46]. In other words, Fallene says Tri-Pac's failure to meet its contractual obligations means the company wrongly retained Fallene's funds. As a matter of law, Fallene cannot pursue a conversion claim. For one, a person cannot convert money (unless in a specifically identifiable account). *See CT102 LLC v. Auto. Fin. Corp.*, 175 N.E.3d 869, 874 (Ind. Ct. App. 2021). For another, and relatedly, the alleged duty to perform arises from the parties' contract, and Fallene argues no independent duty that would give rise to a separate tort action sounding in conversion. *See French-Tex*, 893 N.E.2d at 1167 ("Where, as here, the source of [the] duty toward [another] arises from a contract, then tort law should not interfere.") (quotations and citation omitted); *see also Lake Ridge New Tech Schs. v. Bank of N.Y. Mellon*, 353 F. Supp.3d 745, 757 (N.D. Ind. 2018) (citing *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003)) (same). Counts 5 and 6 must be dismissed.

## CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART Tri-Pac's motion to dismiss [15], DISMISSES Fallene's amended counterclaims for unjust enrichment (count 4) and conversion (counts 5 and 6), and otherwise DENIES the motion. Fallene may proceed on its contract and warranty counterclaims.

SO ORDERED.

August 25, 2025                    *s/ Damon R. Leichty*
                                   Judge, United States District Court